UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MALCOM DUBOSE,

                                    Plaintiff,

-against-

SUNY MARITIME COLLEGE OFFICE OF
FINANCIAL AID, ANDREA DAMAR, ROXANNE
THOMPSON, LLENY DE LA CRUZ, LU-ANNE
PLAISANCE, ROBIN MARSHALL, and
DEFENDANTS KNOWN AND UNKNOWN,

                                    Defendants.

Case No. 1:24-cv-05547 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

Malcolm DuBose ("Plaintiff"), proceeding *pro se*, brings this action against SUNY Maritime College Office of Financial Aid, Andrea Damar, Roxanne Thompson, Lleny de la Cruz, Lu-Anne Plaisance, Robin Marshall, and "Defendants Known and Unknown" (collectively, "Defendants"). The Complaint alleges that Defendants misrepresented Plaintiff's eligibility for federal student aid under Title IV, resulting in his inability to pay tuition and complete his graduate program. *See generally* Dkt. 1 ("Compl.").

Defendants now move to dismiss the Complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). *See* Dkt. 29. Plaintiff has also moved for injunctive and declaratory relief related to his claims. *See* Dkt. 59. For the reasons set forth below, Defendants' motion to dismiss the Complaint is GRANTED and Plaintiff's motion for injunctive and declaratory relief is DENIED.

## BACKGROUND[1]

In 2021, Plaintiff Malcolm DuBose enrolled as a graduate student at SUNY Maritime College (the "College" or "SUNY"), where he was pursuing a Merchant Mariner License and a master's degree in Maritime and Naval Studies.  Compl. at 22; Dkt. 58 at 3.  On or around April 29, 2022, Plaintiff met separately with Defendants Andrea Damar ("Damar") and Robin Marshall ("Marshall"), who worked in the College's Office of Financial Aid ("OFA"), to learn more about accessing Title IV federal student aid to pay his tuition.  Compl. at 24.  Damar and Marshall informed Plaintiff that "he was ineligible for Federal Student Aid" because he was in default on two Federal Family Education Loan Program ("FFEL") undergraduate loans that Plaintiff had taken out in 2010 through the Pennsylvania Higher Education Assistance Authority ("PHEAA").  *Id.*; *see id.* at 30; Dkt. 30-1 at 2.  At these meetings, Damar and Marshall did not provide Plaintiff with information regarding the federal Fresh Start initiative announced by the Department of Education in April 2022.  Compl. at 24, 31.  In relevant part, Fresh Start allowed borrowers who defaulted on certain federal loans

---

[1] The following facts are drawn from Plaintiff's Complaint and accepted as true for purposes of the motion to dismiss.  *See Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025).  In light of Plaintiff's *pro se* status, the Court construes the Complaint broadly, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006), and considers the "allegations in [Plaintiff's] opposition submissions insofar as they are not inconsistent with the allegations pleaded in his . . . Complaint," *Pandya v. SEC*, No. 23-cv-11180 (JLR), 2025 WL 71847, at *1 n.2 (S.D.N.Y. Jan. 10, 2025) (citing *Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998)).  The Court also considers "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs have knowledge and relied on in bringing suit."  *Pandya*, 2025 WL 71847, at *1 (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).  "Where a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the document controls and the allegation is not accepted as true."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 607 F. Supp. 2d 500, 502 (S.D.N.Y. 2009) (citing *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008)), *aff'd*, 671 F.3d 140 (2d Cir. 2011).

prior to March 13, 2020, to restore their Title IV federal student aid eligibility if their ineligibility was "based solely on a prior Title IV loan default." *Id.* at 31.

On August 17, 2022, Plaintiff "was pulled from training and instructed to meet with [Damar] regarding his student aid." Dkt. 36 at 15. Damar again "informed [Plaintiff] that he was ineligible for Federal Student Aid because of two defaulted FFEL loans" and advised Plaintiff to speak with Defendant Roxanne Thompson ("Thompson"), the College's Vice President of Finance and Administration, "if he wished to continue his education." *Id.*; *see* Compl. at 5. Plaintiff met with Thompson on August 17, 2022. Compl. at 24. At this meeting, Plaintiff signed a promissory note with the College setting forth a payment schedule to satisfy a debt of $18,979.91, representing tuition for the 2021-2022 academic year and fall 2022 semester. *Id.*; *see* Dkt. 39 at 48-49. Neither Damar nor Thompson informed Plaintiff that he might be able to clear the default and reinstate his Title IV eligibility under the Fresh Start program. Compl. at 24-25; Dkt. 36 at 15-16.

On January 12, 2023, Plaintiff called Damar "seeking access to Federal Student Aid." Compl. at 25. Damar sent Plaintiff an email advising him to complete his 2022-2023 federal student aid application and reminded him that he "must resolve [his] [f]ederal student loan default before [he] [would] be eligible to receive federal aid again." Dkt. 39 at 57. On January 13, 2023, Plaintiff replied to Damar to inform her that he had completed his 2022-2023 federal student aid application and that his "loans [were] out of default." *Id.* at 58. He also requested that "[i]f there is funding available, [he]'d like to apply it to last semester." *Id.* Damar replied and reiterated that Plaintiff "still need[ed] to resolve [his] prior balance" and that "[f]ederal aid is not intended to cover past balances." *Id.* at 58; *see* Compl. at 25. Ultimately, Plaintiff was unable to obtain federal aid or otherwise pay his tuition pursuant to

the debt-payment agreement and he took a leave of absence from the College later that day.
Compl. at 25.

On June 23, 2023, Plaintiff called Defendant Lleny de la Cruz ("de la Cruz"),
Associate Director of Financial Aid, "seeking access to federal student aid" so that he could
participate in the upcoming 2023 Summer Sea Term ("SST 23"), a requirement of his
graduate program. Compl. at 25; *see id.* at 22, 24. De la Cruz informed Plaintiff that he was
still ineligible for federal student aid because his prior defaulted loans had not yet been
cleared. *Id.* at 26. She did not provide Plaintiff with "any information about . . . Fresh Start."
*Id.* Subsequently, on July 6, 2023, de la Cruz emailed Plaintiff to inform him that she
attempted to process his 2023-2024 federal student-aid application, but it was "flagged with
[a] default resolution requirement." *Id.* at 30; *see id.* at 29. She explained that Plaintiff's
FFEL loans were still "in default status" and reiterated that he "must obtain [a] default
resolution letter from [PHEAA]," after which the OFA would "be able to clear the
requirement and provide [his] federal loan eligibility" for the 2023-2024 academic year. *Id.* at
30. De la Cruz also provided Plaintiff with contact information for PHEAA. *Id.*

On July 10, 2023, Plaintiff sent an email to Thompson reiterating his interest in
satisfying his tuition balance and resolving his outstanding defaults so that he could continue
his graduate program and participate in SST 23, which was set to launch on July 12, 2023.
Dkt. 58 at 2-3; Dkt. 39 at 54. He also "acknowledge[d] the exceptional support and
responsiveness of [de la Cruz], who ha[d] been instrumental in helping [him] resolve this
issue promptly." Dkt. 58 at 3. The next day, Plaintiff sent a follow-up email attaching
correspondence from Aidvantage confirming that Plaintiff had applied to consolidate his
outstanding student loans and enter a repayment plan. *See id.* at 2, 5-28. Plaintiff also
attached a letter from Aidvantage, dated February 10, 2023, confirming that "[u]nder the

Department of Education's 'Fresh Start' [his] loans [were] no longer in default, and they ha[d] been transferred to Aidvantage effective 02/04/23." *Id.* at 30-31.  Thompson replied and informed Plaintiff that she was "not able to remove the hold on [his] account" because he had not yet resolved his tuition balance.  Dkt. 39 at 51.  Plaintiff asked if Thompson could remove the hold if he paid down some of the balance.  *Id.* at 52.  He explained that there would be "no point in" returning for the Fall 2023 semester if he could not participate in SST 23.  *Id.* Thompson informed Plaintiff that the situation could not be resolved in time for him to participate in SST 23, *see id.* at 54, and Damar suggested that Plaintiff "consider applying for a private loan to assist [him] with [his] prior balance" because "[f]ederal financial aid w[ould] assist [him] going forward" but was "not meant to cover a prior balance," *id.* at 53.  On July 14, 2023, Plaintiff informed Thompson and Damar that he was unable to secure a private loan or scholarships to cover his outstanding tuition balance.  *Id.* at 69-70.  He maintained that he had been eligible for federal aid since April 2022 through Fresh Start, *see id.* at 75, and stated that if he could not obtain federal aid to cover his past balance and participate in SST 23, he intended to withdraw from the graduate program, *id.* at 70; *see id.* at 71-73.

On July 19, 2023, Damar asked Plaintiff whether he was "still making attempts to address [his] prior balance" and explained that the OFA was "awaiting . . . confirmation of the completion of [his] loan consolidation application" with Aidvantage under Fresh Start. *Compl.* at 36.  She further requested that Plaintiff print, sign, and return an acknowledgement of his participation in Fresh Start in order to qualify for future aid.  *Id.*  On July 20, 2023, Damar forwarded Plaintiff correspondence from Aidvantage reiterating that Plaintiff "would need to get [a] default clearance letter" from PHHEA in order to restore his eligibility for federal student aid.  Dkt. 39 at 79-80; *see* Compl. at 30.  Plaintiff responded, without further explanation, that he was no longer pursuing consolidation, and requested that the College "not

communicate with [A]idvantage on [his] behalf" and that he would "ask [Aidvantage] to cease communication with the [C]ollege." Compl. at 38. Later that day, Damar requested a status update from Plaintiff regarding the payment of his outstanding tuition balance. *Id.* On August 1, 2023, after receiving no response, Damar informed Plaintiff that the College had retroactively awarded him a scholarship to help reduce his outstanding tuition balance and requested that he "review [his] account and address [his] balance immediately." Dkt. 39 at 83.

On August 3, 2023, Plaintiff emailed a complaint to Defendant Lu-Anne Plaisance ("Plaisance"), Assistant Vice President for Human Resources and Chief Diversity Officer, reiterating his belief that he "became eligible for Title IV Federal Student aid in April of 2022" and asserting that "[e]very member of the financial aid department" had "explicitly denied" him aid. Compl. at 40. The following week, Plaisance advised Plaintiff that the "matter [would] be referred to financial aid officials . . . so they may review the terms of [his] Financial Student Aid Eligibility." *Id.* at 42. Plaisance asked that Plaintiff "allow the appropriate review of [his] file but . . . also provided the procedure to file any external complaint that [he] [saw] fit." *Id.* On August 25, 2023, de la Cruz emailed Plaintiff a letter from the OFA informing him that he did not qualify for the Fresh Start program because his default had not yet been cleared with the PHEAA. *See id.* at 44-45. The OFA reminded Plaintiff that they had previously provided him with contact information for the PHEAA, who could "provide default resolution and clearance" so that he could "regain federal aid eligibility." *Id.* at 45.

On July 19, 2024, Plaintiff initiated this action, *see* Compl., and on November 26, 2024, Defendants moved to dismiss the Complaint, *see* Dkt. 29. Defendants' motion is fully briefed. *See* Dkt. 31 ("Br"); Dkt. 36 ("Opp."); Dkt. 48 ("Reply"); Dkt. 50-1 ("Surreply"). On

March 21, 2025, Plaintiff moved for injunctive and declaratory relief. *See* Dkt. 59. That motion is also fully briefed. *See* Dkts. 62, 63, 67.

## DISCUSSION

Defendants move to dismiss the Complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). The Court will first address Defendants' proffered grounds for dismissal under Rule 12(b)(1), as the existence of subject-matter jurisdiction is a threshold inquiry that determines whether the Court is empowered to reach the merits of Plaintiff's claims. *See J.L. ex. rel. J.P. v. N.Y.C. Dep't of Educ.*, 324 F. Supp. 3d 455, 463 (S.D.N.Y. 2018). Lastly, the Court will turn to Plaintiff's motion for injunctive and declaratory relief.

### I.    Subject-Matter Jurisdiction

Defendants argue that the Complaint should be dismissed for lack of subject-matter jurisdiction because Plaintiff lacks Article III standing as to all asserted claims. *See* Br. at 11-13. In the alternative, Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiff's claims that assert violations of the Higher Education Act ("HEA") of 1965, 20 U.S.C. § 1001 *et seq.*, and certain criminal statutes, 18 U.S.C §§ 242, 245, 246, 1343, because they do not confer a private right of action. *See* Br. at 13-15. For the reasons set forth below, the Court finds that Plaintiff has established Article III standing but that Plaintiff's HEA and criminal claims fail to raise a federal question.

### A.  Article III Standing

"A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly brought under [Rule] 12(b)(1)." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020) (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). "The standing question is distinct from whether

[Plaintiff] has a cause of action." *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) (collecting cases). "While the pleading of a cause of action must possess enough heft to show that the pleader is entitled to relief, to plead standing, the pleader need only show that allowing her to raise her claim in federal court would not move so beyond the court's ken as to usurp the power of the political branches." *Ortiz v. Pace Univ.*, 761 F. Supp. 3d 695, 700 (S.D.N.Y. 2025) (quoting *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 111 (2d Cir. 2018)). This distinction "is important because a dismissal for lack of standing under Rule 12(b)(1) is without prejudice, while a dismissal for failure to state a claim under Rule 12(b)(6) is on the merits and may have preclusive effect." *Id.* (citing *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017)).

"For a plaintiff to have Article III standing, he must establish three things: (1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of and (3) that his injury will be redressed by a favorable judicial decision." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Here, Plaintiff asserts several ostensible injuries: he alleges that he was denied federal student aid to which he was entitled,[2] incurred a debt of nearly $19,000 to the College, and was deprived of a diploma. *See* Compl. at 2, 24. Defendants do not dispute that Plaintiff was injured or that a favorable judicial decision would

---

[2] "[I]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *The Intercept Media, Inc. v. OpenAI, Inc.*, --- F. Supp. 3d. ---, 2025 WL 556019, at *6 (S.D.N.Y. Feb. 20, 2025) (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) (per curiam)); *accord Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 573-74 (2d Cir. 2018). Accordingly, the Court assumes, for purposes of Article III standing, that Plaintiff was eligible for Fresh Start in April 2022 and Defendants were responsible for providing him with timely and accurate information about the program.

redress his injuries. Rather, they argue that Plaintiff lacks standing because his injuries were self-inflicted, thus defeating the causation or "traceability" requirement of Article III standing. *See* Br. at 11-13. The Court disagrees.

The Second Circuit "ha[s] been clear that the causal-connection element of Article III standing, which is the requirement that the plaintiff's injury be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court, does not create an onerous standard." *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 352-53 (2d Cir. 2023) (quoting *Carter*, 822 F.3d at 55-56). This "relatively modest" standard "require[s] something 'lower than proximate cause,'" and "no more than *de facto* causality." *M.G. v. N.Y. State Off. of Mental Health*, 572 F. Supp. 3d 1, 12 (S.D.N.Y. 2021) (first quoting *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013); and then quoting *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019)); *accord Ateres Bais Yaakov Acad.*, 88 F.4th at 353. The proper inquiry at the pleading stage is "not whether . . . the alleged injury is plausibly fairly traceable, but, rather, whether the injury is possibly fairly traceable." *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 156 (S.D.N.Y. 2018).

Defendants reason that Plaintiff's injuries were self-inflicted because it was solely his responsibility to enroll in Fresh Start and pay tuition. *See* Br. at 12. "To be sure, a plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury," but "[a]n injury is self-inflicted so as to defeat the causation necessary to establish standing . . . 'only if . . . the injury is so completely due to the plaintiff's own fault as to break the causal chain.'" *Nat'l Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) (second omission in original) (first citing *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000); and then quoting *St. Pierre*, 208 F.3d at 402). "So long as the defendants have engaged in

conduct that may have contributed to causing the injury, it would be better to recognize

standing." *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (quoting *St.*

*Pierre*, 208 F.3d at 402).  Here, Plaintiff alleges that Defendants "engaged in conduct that

may have contributed to causing his injury," *id.*: according to the Complaint, Plaintiff did not

enroll in Fresh Start and could not obtain federal student aid because Defendants allegedly

failed to inform him about Fresh Start and incorrectly represented that he was ineligible for

Title IV, *see* Compl. at 24-25; *cf. Baptiste-Elmine v. Richland & Falkowski, PLLC*, No. 21-cv-

04994 (RPK) (PK), 2025 WL 974346, at *8 (E.D.N.Y. Apr. 1, 2025) (finding traceability was

established where plaintiffs incurred injury by engaging in conduct in reliance on defendant's

allegedly "false or misleading statements" (quoting *Bristol v. Forster & Garbus, LLP*, No. 23-

cv-01678 (RPK) (MMH), 2024 WL 579696, at *2 (E.D.N.Y. Feb. 13, 2024))).  Because

Plaintiff alleges that his failure to secure aid was at least "caused in part by" Defendants'

conduct, it cannot be said that his injuries are "'solely' attributable to [his] own actions."

*Backer*, 788 F.3d at 344.  Even if Plaintiff was ultimately responsible for enrolling in Fresh

Start, his own failure to do so "did not 'break the causal chain' between Defendant[s']

challenged conduct" — their alleged misrepresentations and omissions that he was ineligible

for Fresh Start and Title IV — "and his asserted injury" — the denial of his federal student

aid, incurrence of unnecessary debt, and "lack of diploma."  *Doe v. Columbia Univ.*, No. 20-

cv-06770 (GHW), 2022 WL 4537851, at *19 (S.D.N.Y. Sept. 28, 2022) (citing *Nat. Res. Def.*

*Council*, 710 F.3d at 85) (holding that plaintiff satisfied traceability requirement despite

engaging in actions that caused his own injuries because defendant's "conduct 'may have

contributed to causing the injur[ies]'" (alteration in original) (quoting *Backer*, 788 F.3d at

344)).  "Standing under Article III requires only that Plaintiff[] allege a connection between

Defendants' conduct . . . and the alleged injury, which [he] ha[s] done."  *M.G.*, 572 F. Supp.

3d at 13 (holding that plaintiffs satisfied traceability requirement despite contributing to their own injuries).

### B.    Federal-Question Jurisdiction

Moving next to whether there is federal-question jurisdiction, "[f]ederal district courts have subject-matter jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States,'" but "federal claims that are 'not colorable[] . . .' do not give rise to federal-question jurisdiction." *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 126 (2d Cir. 2016) (first quoting 28 U.S.C. § 1331; and then quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006)).  The Supreme Court has "cautioned courts against collapsing the distinction 'between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits.'"  *Id.* (omission in original) (quoting *Shapiro v. McManus*, 577 U.S. 39, 45 (2015)).  Accordingly, "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction" unless the claim is "'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit,'" *id.* at 126-27 (quoting *Shapiro*, 577 U.S. at 45-46), "such as when it 'is foreclosed by Supreme Court or Second Circuit precedent,'" *Li v. Ali Baba Grp. Holding Ltd.*, No. 19-cv-11629 (VSB), 2021 WL 4084574, at *4 (S.D.N.Y. Sept. 7, 2021) (quoting *Gallego*, 814 F.3d at 128)).  Plaintiff asserts claims alleging violations of several such statutes that do not confer private rights of action, namely, the HEA and certain provisions of the criminal code.  These claims fail to raise a colorable federal question and must be dismissed for lack of subject-matter jurisdiction.

First, Plaintiff asserts several claims alleging that Defendants violated the HEA by withholding information about the Fresh Start program and misrepresenting his eligibility for federal student aid under Title IV.  *See* Compl. at 11-14, 18 (asserting violations of 20 U.S.C.

§§ 1019c(b)(1)(A)-(B), 1092f(b)(3), 1094(a)(19), and 1097(b)(d)); *id.* at 16-17 (asserting violations of 42 U.S.C. §§ 1985 and 1986 based on deprivation of HEA rights). The Second Circuit has held that "the HEA does not provide student borrowers a private right of action to enforce its provisions," *Sanon v. Dep't of Higher Educ.*, 453 F. App'x 28, 30 (2d Cir. 2011) (summary order) (citing *Josey v. Sallie Mae, Inc.*, No. 09-cv-04403 (AJP), 2009 WL 2518643, at *5 & n. 8 (S.D.N.Y. Aug. 17, 2009)), and "nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions," *Nehorai v. U.S. Dep't of Educ. Direct Loan*, No. 08-cv-00920 (SLT) (LB), 2008 WL 1767072, at *1 (E.D.N.Y. Apr. 14, 2008) (quoting *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002)) (dismissing *pro se* HEA claims for lack of subject-matter jurisdiction). Because "Plaintiff has not demonstrated that Congress intended to make a private remedy available, the Court lacks subject matter jurisdiction and must dismiss [his] causes of action under the [HEA]." *Clark v. Student Loan Fin. Corp.*, No. 18-cv-09354 (JPO), 2019 WL 4412571 (S.D.N.Y. Sept. 16, 2019) (citation omitted) (citing *Suter v. Artist M.*, 503 U.S. 347, 363 (1992)). By extension, the Court lacks subject-matter jurisdiction over Plaintiff's claims under 42 U.S.C. §§ 1985(3) and 1986, which are premised on violations of the HEA. *See Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 587 (2d Cir. 1988) ("§ 1985(3) 'is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right . . . is breached by a conspiracy in the manner defined by the section." (omission in original) (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979))); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) ("A claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985.").

Second, Plaintiff asserts claims under several criminal statutes that must also be dismissed for lack of subject-matter jurisdiction. *See* Compl. at 15, 19-21 (citing 18 U.S.C §§ 242, 245, 246, and 1343). "[N]o private right of action exists under criminal statutes absent an indication that Congress intended to create such a private right of action." *Cain v. U.S. Bank, Nat'l Ass'n*, No. 20-cv-05034 (AMD) (AYS), 2021 WL 3884196, at *3 (E.D.N.Y. Aug. 31, 2021) (alteration in original) (quoting *Nath v. Select Portfolio Servicing, Inc.*, 732 F. App'x 85, 87 (2d Cir. 2018)). There is no such indication here, and Plaintiff has made no argument to the contrary. *See id.* ("The person seeking a private remedy bears the burden of demonstrating that Congress intended to make one available." (quoting *N.Y.C. Env't Just. All. v. Giuliani*, 214 F.3d 65, 73 (2d Cir. 2000))). In any case, Plaintiff's claims under 18 U.S.C. §§ 245 and 246 are premised on violations of the HEA and fail for the reasons already explained, *see supra* pp. 11-12, and Plaintiff's claims under 18 U.S.C. §§ 242 and 1343 are foreclosed by binding Second Circuit precedent, *see Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994) (no private right of action under 18 U.S.C. § 242); *Off. Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir. 1989) (no private right of action under 18 U.S.C. § 1343). Accordingly, the Court dismisses Plaintiff's claims brought pursuant to the HEA and the aforementioned criminal statutes pursuant to Rule 12(b)(1).

## II.    Failure to State a Claim

The Court construes Plaintiff's remaining allegations as asserting claims for discrimination under the Equal Education Opportunity Act ("EEOA") of 1972, 20 U.S.C. § 1701 *et seq.*, and retaliation under Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C.

§ 2000d *et seq.*  *See* Compl. at 2, 15.[3]  Defendants argue that these claims must be dismissed

pursuant to Rule 12(b)(6) for failure to state a claim.  The Court agrees.

"A complaint survives a Rule 12(b)(6) motion to dismiss if the facts, taken as true and

with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim to relief."

*Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024) (citing

*MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023)).  "In

making that assessment," courts "'are not bound to accept as true a legal conclusion couched

as a factual allegation,' and '[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.'"  *Buon v. Spindler*, 65 F.4th 64, 76

(2d Cir. 2023) (citations omitted) (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although Plaintiff's "allegations in this [*pro se*] case must be read so as to 'raise the

strongest arguments that they suggest,'" *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138,

146 (2d Cir. 2002) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)), the

Court concludes that Plaintiff has failed to state a claim under either the EEOA or Title VI and

grants Defendants' motion to dismiss these claims pursuant to Rule 12(b)(6).

---

[3] Plaintiff also cites to Title V of the Americans with Disabilities Act ("ADA") of 1990, 42
U.S.C. § 12201 *et seq.*, in support of his retaliation claim.  *See* Compl. at 15 (citing 42 U.S.C.
§ 12203).  However, Plaintiff's filings make no mention of a disability, and in any case, it is
well established that "the Eleventh Amendment bars retaliation claims under Title V of the
Americans with Disabilities Act" against states and arms of the state like SUNY.  *Morales v.
New York*, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014); *see Dube v. State Univ. of N.Y.*, 900 F.2d
587, 594 (2d Cir. 1990) ("For Eleventh Amendment purposes, SUNY 'is an integral part of
the government of the State . . . and when it is sued the State is the real party.'" (citation
omitted)).  Because Plaintiff also cites to a regulation promulgated under Title VI, the Court
construes Plaintiff's retaliation claim as arising under Title VI.  *See McLeod v. Jewish Guild
for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) ("The failure in a complaint to cite a statute, or
to cite the correct one, in no way affects the merits of a claim.  Rather, '[f]actual allegations
alone are what matters,'" especially "where a pro se litigant is involved." (quoting *Albert v.
Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc))).

### A.    The EEOA

"The EEOA provides that '[n]o State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin,'" and "creates a private cause of action for individuals who have been denied an equal education opportunity." *Collins v. City of New York*, 156 F. Supp. 3d 448, 456 (S.D.N.Y. 2016) (first quoting 20 U.S.C. § 1703; and then citing 20 U.S.C. § 1706).   Accordingly, to state a claim under the EEOA, Plaintiff must plausibly allege that he was "denied educational opportunities . . . because of his 'race, color, sex or national origin.'"  *Keitt v. New York City*, 882 F. Supp. 2d 412, 434 (S.D.N.Y. 2011) (quoting 20 U.S.C. § 1703).   Plaintiff has not made this required showing.

Plaintiff, who self-identifies as male and Black, alleges that Defendants withheld information from him regarding the Fresh Start program "to deny him Title IV access and manipulate their cohort default rate."  Dkt. 36 at 8; *see id.* at 13.   A school's cohort default rate is calculated based on the number of defaulted loans held by its students.  *See Calise Beauty Sch., Inc. v. Riley*, 941 F. Supp. 425, 427 (S.D.N.Y. 1996).   "[T]o keep the cost of [federal student loan] programs down, the Secretary of Education reviews the number of defaulted loans each year and suspends the eligibility of any school whose 'cohort default rate'" exceeds a certain percentage.  *Id.* at 427; *see* 34 C.F.R. § 668.206.   Plaintiff alleges that because "Black men . . . have the highest rate of student loan default of all other student borrowers," Defendants sought to obstruct him from obtaining federal aid to ensure that their CDR remained low.  Dkt. 36 at 8 n.5.   To support his argument, Plaintiff cites to a report that compares national student-loan default rates between Black and white college graduates and contains no specific information pertaining to the College.  *Id.*   Plaintiff alleges no other facts suggesting that Defendants' alleged conduct was based in any way on his race or gender.  *See*

*Z.Q. v. N.Y.C. Dep't of Educ.*, No. 20-cv-09866 (ALC), 2024 WL 1333144, at *6 (S.D.N.Y. Mar. 28, 2024) (dismissing EEOA claim for failure to state a claim where complaint was "devoid of allegations that the . . . barriers Plaintiffs faced were due to their [protected characteristic]"). To the contrary, the exhibits attached to Plaintiff's filings indicate that Defendants spent considerable time and effort guiding Plaintiff through the federal-aid application process, which belies his claim that they were actively seeking to discourage him from obtaining aid. *See, e.g.*, Dkt. 58 at 3 (Plaintiff acknowledging Defendant de la Cruz's "exceptional support and responsiveness"). The College even awarded Plaintiff a retroactive scholarship to help him pay down his 2022-2023 tuition balance so that he could obtain federal student aid for the 2023-2024 academic year. *See* Dkt. 39 at 83.

In sum, "[w]holly absent from the complaint are any allegations from which the Court could plausibly infer that [P]laintiff's race. . . [or] sex . . . gave rise to the conduct of which [he] complains." *Ogidi-Abegaje v. Nassau Cmty. Coll.*, No. 19-cv-05519 (JMA) (ARL), 2020 WL 7699643, at *2 (E.D.N.Y. Dec. 28, 2020). Accordingly, Plaintiff's EEOA claim must be dismissed for failure to state a claim.

### B.    Title VI

Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Title VI authorizes an implied private right of action to enforce Section 601's prohibition on intentional discrimination based on race, color, or national origin," and "forbids a recipient of federal funds from retaliating against one who complains about discriminatory conduct prohibited by the statute." *Bloomberg v. N.Y.C. Dep't of Educ.*, 119 F.4th 209, 214 (2d Cir. 2024). To state a claim for retaliation under Title

VI, Plaintiff "must allege that [he] engaged in protected activity, [Defendants] knew about [his] protected activity, [he] suffered an adverse action, and there was 'a causal connection between the protected activity and the adverse action.'" *Id.* at 215 (quoting *Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)).  Plaintiff has not adequately alleged these elements and has thus not stated a claim.

Plaintiff alleges that Defendants Damar and de la Cruz retaliated against him "for filing a . . . complaint about the pattern of denial and inaccurate communications concerning his eligibility for [f]ederal [s]tudent [a]id."  Compl. at 15.  Although "complaining about . . . conduct that violates Title VI" is a "protected activity," *Bloomberg*, 119 F.4th at 214 (citing 34 C.F.R. § 100.7(e)), Plaintiff's complaint, which he emailed to Plaisance, contains no allegation that he or any other individual was mistreated "on the ground of race, color, or national origin," 42 U.S.C. § 2000d; *see* Compl. at 40.  Because Plaintiff's email "neither 'pointed out discrimination against particular individuals nor discriminatory practices by [Defendants],' its mailing does not constitute protected activity for the purpose of making a *prima facie* showing of retaliation."  *Cook v. CBS, Inc.*, 47 F. App'x 594, 596-97 (2d Cir. 2002) (summary order) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988)); *accord Ikedilo v. Statter*, No. 19-cv-09967 (RA), 2020 WL 5849049, at *10 (S.D.N.Y. Sept. 30, 2020); *Salem v. N.Y. Univ.*, No. 22-cv-05112 (VEC) (SLC), 2023 WL 8438713, at *8 (S.D.N.Y. Sept. 15, 2023) (collecting cases), *report and recommendation adopted,* 2023 WL 8253026 (S.D.N.Y. Nov. 29, 2023).  "Because [Plaintiff] has failed to allege facts . . . to suggest he engaged in protected activity, he has failed to state a plausible claim for . . . retaliation under Title VI."  *Salem*, 2023 WL

8438713, at *8.[4]  Accordingly, Plaintiff's Title VI claim must be dismissed pursuant to Rule

12(b)(6).

## III.    Motion for Preliminary Injunction and Declaratory Relief

After the motion to dismiss was fully briefed, Plaintiff filed a motion for injunctive

and declaratory relief.  *See* Dkt. 59.  Plaintiff argues that Defendants' "demand for [him] to

disclose proof that he that he settled his prior defaulted FFEL loans" violated 20 U.S.C.

§ 1098g, a preemption provision of the HEA.  Dkt. 59 at 6; *see* 20 U.S.C. § 1098g ("Loans

made, insured, or guaranteed pursuant to a program authorized by title IV of the [HEA] shall

not be subject to any disclosure requirements of any State law.").  Plaintiff seeks, among other

things, "[a] declaration that Defendant's [disclosure] requirements are preempted" and a

---

[4] In his opposition brief, Plaintiff attempts to raise new sex and race discrimination claims
pursuant to Title IX and 42 U.S.C. § 1983.  *See* Opp. at 10, 21, 24, 29-30.  However, "[a] *pro
se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition
papers" unless "the claims could have been asserted based on the facts alleged in the
complaint."  *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citation omitted).  As
discussed herein, Plaintiff has failed to allege facts demonstrating that Defendants' conduct
was in any way based on his race or sex, so the Court does not consider Plaintiff's new claims
under Title IX and § 1983.  *Cf. Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp.
2d 522, 527 (S.D.N.Y. 2013) (plaintiff failed to state a claim under Title IX by failing to
allege "any facts from which one could infer any discriminatory intent or motivation with
respect to race or gender" by defendant).  To the extent Plaintiff also asserts retaliation claims
under Title IX and § 1983, the Court likewise declines to consider those claims, having
determined that Plaintiff has not pleaded that he engaged in any protected activity.  *See
Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011) (Title IX
retaliation claim requires showing that plaintiff engaged in protected activity); *Vega v.
Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015) (same for § 1983).

Plaintiff also attempts to raise a new claim in his opposition brief under New York General
Business Law § 349, which prohibits deceptive trade practices.  *See* Opp. at 10, 15-17.
However, claims under this section require a showing that a defendant's alleged conduct
"ha[s] a broad impact on consumers at large," and "[p]rivate contract disputes unique to the
parties" do "not fall within the ambit of the statute."  *Lava Trading Inc. v. Hartford Fire Ins.
Co.*, 326 F. Supp. 2d 434, 439 (S.D.N.Y. 2004) (quoting *N.Y. Univ. v. Cont. Ins. Co.*, 662
N.E.2d 763, 770 (N.Y. 1995)).  Because Plaintiff has not alleged facts in his Complaint that
could support such a claim, the Court does not consider it here.

preliminary injunction "reinstat[ing] [him] as a student in good standing" with "a full scholarship." Dkt. 59 at 8. Such claims for relief under the HEA fail for the same reasons set forth above: "the HEA does not provide student borrowers a private right of action to enforce its provisions." *Sanon*, 453 F. App'x at 30; *see supra* pp. 11-12. Therefore, the Court denies Plaintiff's motion.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's HEA and criminal claims are DISMISSED pursuant to Rule 12(b)(1), and Plaintiff's Title VI and EEOA claims are DISMISSED pursuant to Rule 12(b)(6). Plaintiff's motion for injunctive and declaratory relief is DENIED. The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 29 and 59 and close the case.

Dated: May 23, 2025
      New York, New York

                                SO ORDERED.

                                *Jennifer Rochon*

                                JENNIFER L. ROCHON
                                United States District Judge